1    LECLAIRRYAN LLP
     PETER M. HART (SBN 107920),
2    Peter.hart@leclairryan.com
3    44 Montgomery Street, 18th Floor
     San Francisco, CA 94104
4    Tel: 415-391-7111
     Fax: 415-391-8766
5
6    FULTZ MADDOX HOVIOUS & DICKENS, PLC
     ADRIANNE J. SIMON (Cal. Bar No. 150227)
7    101 South Fifth Street, Suite 2700
     Louisville, KY 40202-3116
8    asimon@fmhd.com
     Tel: 502-588-2000
9    Fax: 502-588-2020
10   Attorneys for Defendant Ivy Ventures, LLC
11
12                      UNITED STATES DISTRICT COURT
13                   NORTHERN DISTRICT OF CALIFORNIA
14                        SAN FRANCISCO DIVISION
15
16   MYRA MARCELO, a California resident          CASE NO. CV 10-4609-WHA
17              Plaintiff,                         **DEFENDANT'S MEMORANDUM IN
                                                  OPPOSITION TO PLAINTIFF'S
18        v.                                      APPLICATION FOR TEMPORARY
                                                  RESTRAINING ORDER AND ORDER TO
19   IVY VENTURES, LLC, a Virginia limited        SHOW CAUSE RE PRELIMINARY
     liability company,                           INJUNCTION**
20
              Defendant.                          Date: November 18, 2010
21                                                Time: 8:00 AM
22                                                Courtroom: 9
                                                  Judge: Hon. William H. Alsup
23
24
25
26
27
28

1

**TABLE OF CONTENTS**

2

**Page**

3

I.   INTRODUCTION………………..……………………………………………………..2

4

II.  PROCEDURAL BACKGROUND….…………………………………………………..3

5

III. SUMMARY OF RELEVANT FACTS………………………………………………….5

6

    A.  Virginia Court's September 27, 2010 Decision………………………………………...6

7

    B.  Misstatements Made in Marcelo's Motion for TRO……………………………........8

8

IV. STANDARD FOR GRANTING TEMPORARY RESTRAINING ORDER……………9

9

V.  ARGUMENT ………………………………………………………………………...11

10

    A.  Marcelo Has Not Met The Prerequisites of Fed.R.Civ.P. 65(a)………………………..11

11

    B.  Marcelo Misappropriated Confidential Information and Trade
       Secrets in Order to Compete Against Ivy……………………………………………19

12

VI. CONCLUSION……………………………………………………………………….21

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PRINTED ON

RECYCLED PAPER

Defendant's Memorandum in Opposition to Plaintiff's
Application for Temporary Restraining Order and Order to  Show
Cause Re Preliminary Injunction

# TABLE OF AUTHORITIES

**Cases**                                                                   **Page(s)**

*Am. Nat'l Fire Ins. Co. v. Hungerford*
  53 F.3d 1012 (9th Cir. 1995)……………………………………………………18

*Arcamuzi v. Continental Air Lines, Inc.*
  819 F.2d 935 (9th Cir. 1987)………………………………………………….10

*Bracco v. Lackner*
  462 F.Supp. 436 (N.D. Cal. 1978)……………………………………………11

*Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas R. Co.*
  363 U.S. 528 (1960)…………………………………………………………..11

*Caribbean Marine Serv. Co., Inc. v. Baldridge*
  844 F.2d 668 (9th Cir. 1988)………………..……..…………………....9, 16

*Continental Car-Nu-Var Corp. v. Moseley*
  24 Cal.2d 104 (1944)…………………………………………………………20

*Continental Casualty Co. v. Fibreboard Corp.*
  No. C 91-2002, 1992 U.S. Dist. LEXIS 502, *7-8 (N.D. Cal. Jan. 8, 1992)………………18

*Deckert v. Independence Shares Corp.*
  311 U.S. 282 (1940)…………………………………………………………..10

*DeFeo v. Proctor & Gamble Co.*
  831 F.Supp. 776 (N.D.Cal. 1993)……………………………………………18

*Empire Steam Laundry v. Lozier*
  165 Cal. 950 (1913)………………………………………………………19, 20

*Golden Eagle  v. Travelers Cos.*
  103 F.3d 750 (9th Cir. 1996)…………………………………………………13

*Google, Inc. v. Microsoft Corp.*
  415 F.Supp.2d 1018 (N.D. Cal. 2005)……………………………………….15

*Gov't Employees Ins. Co. v. Dizol*
  133 F.3d 1220 (9th Cir. 1998)……………………………………………….18

*Granny Goose Foods, Inc. v. Bhd. Of Teamsters & Auto Truck Drivers*
  415 U.S. 423 (1974)…………………………………………………………..9

*Hollingsworth Solderless Terminal Co. v. Turley*
  622 F.2d 1324 (9th Cir. 1980)……………………………………………….13

*Inland Steel v. U.S.*
  306 U.S. 153 (1939)………………………………………………………….10

*Jenkins v. Commonwealth Land Title Ins. Co.*
  95 F.3d 791  (9th Cir. 1996)………………………………………………...18

*Jett v. Eco-Air Prods.,*

Defendant's Memorandum in Opposition to Plaintiff's
Application for Temporary Restraining Order and Order to  Show
Cause Re Preliminary Injunction

CV 07-1159 PA, 2007 U.S. Dist. LEXIS 50811 (C.D. Cal. June 4, 2007)......................13

*Keown v. Tudor Ins. Co.*
   621 F.Supp.2d 1025(D. Haw. 2008)........................................................................13

*Klamath-Orleans Lumber, Inc. v. Miller*
   87 Cal. App. 3d 458 (1978).................................................................................19

*Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*
   887 F.Supp. 1320 (N.D. Cal. 1995)........................................................................10

*Loral Corp. v. Moyes*
   174 Cal. App. 3d 268  (Cal. App. 6th Dist. 1985).......................................12, 19, 20, 21

*Los Angeles Memorial Coliseum Comm'n v. National Football League*
   634 F.2d 1197 (9th Cir. 1980)..............................................................................14

*Martin v. International Olympic Committee*
   740 F.2d 670 (9th Cir. 1984)...............................................................................10

*Miller v. California Pacific Medical Center*
   19 F.3d 449 (9th Cir. 1994).................................................................................10

*Morlife, Inc. v. Perry*
   56 Cal. App. 1514 (1997)....................................................................................20

*Oakland Tribune v. Chronicle Pub. Co., Inc.*
   762 F.2d 1374 (9th Cir. 1985).........................................................................11, 14

*Paul Bus. Sys., Inc. v. Canon U.S.A., Inc.*
   240 Va. 337 S.E.2d 804 (1990)...............................................................................6

*Roland Mach. Co. v. Dresser Indus., Inc.*
   749 F.2d 380 (7th Cir. 1984)...............................................................................14

*Sampson v. Murray*
   415 U.S. 61 (1974)..........................................................................................11

*Schmitt v. JD Edwards World Solutions Co.*
   No. C 01-1009, 2001 U.S. Dist. LEXIS 7089  (N.D. Cal. May 18, 2001).......................13

*Sky Star Moon & Universe Trust v. HSBC Bank USA*
   Case No. CV10-234-S-EJL, 2010 U.S. Dist. LEXIS 45991
   (D. Idaho May 11, 2010).............................................................................14, 16, 17

*St. Paul Fire & Marine Ins. Co. v. Nonprofits United*
   91 Fed. Appx. 537 (9th Cir. 2004)........................................................................13

*Stanley v. Univ. of Southern California*
   13 F.3d 1313 (9th Cir. 1994)...........................................................................10, 11

*Swenson v. T-Mobile USA, Inc.*
   415 F.Supp.2d 1101 (S.D. Cal. 2006).....................................................................15

*Thomas Weisel Partners LLC v. BNP Paribas,*

Defendant's Memorandum in Opposition to Plaintiff's
Application for Temporary Restraining Order and Order to  Show
Cause Re Preliminary Injunction

No. C 07-6198, 2010 U.S. Dist. LEXIS 11626 (N.D. Cal. Feb. 10, 2010)…………...…20, 21

**Statutes and Rules**

Federal Rules of Civil Procedure 65(b)……………………………………………………2, 9

28 United States Code

   Section 145…………….…………………………………………………………………..

Virginia Code Ann.

   Section 8.01-628……….………………………………………………………………..2

Defendant's Memorandum in Opposition to Plaintiff's
Application for Temporary Restraining Order and Order to  Show
Cause Re Preliminary Injunction

1   LECLAIRRYAN LLP
    PETER M. HART (SBN 107920),
2   Peter.hart@leclairryan.com
    44 Montgomery Street, 18th Floor
3   San Francisco, CA 94104
    Tel: 415-391-7111
4   Fax: 415-391-8766

5

6   FULTZ MADDOX HOVIOUS & DICKENS, PLC
    ADRIANNE J. SIMON (Cal. Bar No. 150227)
7   101 South Fifth Street, Suite 2700
    Louisville, KY 40202-3116
8   asimon@fmhd.com
    Tel: 502-588-2000
9   Fax: 502-588-2020

10  Attorneys for Defendant Ivy Ventures, LLC

11

12                    UNITED STATES DISTRICT COURT

13                   NORTHERN DISTRICT OF CALIFORNIA

14                       SAN FRANCISCO DIVISION

15

16  MYRA MARCELO, a California resident     CASE NO. CV 10-4609-WHA

17              Plaintiff,                  **DEFENDANT'S MEMORANDUM IN
                                            OPPOSITION TO PLAINTIFF'S
18      v.                                  APPLICATION FOR TEMPORARY
                                            RESTRAINING ORDER AND ORDER TO
19  IVY VENTURES, LLC, a Virginia limited   SHOW CAUSE RE PRELIMINARY
    liability company,                      INJUNCTION**
20
                Defendant.                  Date: November 18, 2010
21                                          Time: 8:00 AM
                                            Courtroom: 9
22                                          Judge: Hon. William H. Alsup

23

24

25          Defendant Ivy Ventures, LLC ("Ivy") respectfully submits the following memorandum

26  in opposition to plaintiff Myra Marcelo's ("Marcelo" or "Plaintiff") Application for Temporary

27  Restraining Order and Order to Show Cause re Preliminary Injunction ("Motion for TRO").

28

PRINTED ON
RECYCLED PAPER

Notice of Motion, Motion and
Memorandum in Support of Ivy Ventures,
LLC's Motion to Dismiss or Stay

1   Ivy's memorandum is based upon the accompanying declaration of Doug Wetmore, all of the

2   pleadings and papers on file herein, and any argument that may be heard on the matter.

3   **I.   <u>INTRODUCTION</u>**

4       Ivy brought suit in Virginia against Marcelo, a former employee, because of her

5   numerous breaches of fiduciary duty owed to Ivy, under Virginia common law, statutory law,

6   and pursuant to the terms of her contractual agreements with Ivy.  After a hearing where all

7   parties were represented, the Virginia court asserted jurisdiction and granted a six-month

8   Temporary Injunction against Marcelo.[1]   This Motion for TRO is yet another procedural

9   mechanism that Marcelo exploits in an attempt to avoid the Virginia's court jurisdiction and the

10  Temporary Injunction there.[2]

11      Marcelo seeks to enjoin restrain and enjoin Ivy from:

12      Enforcing, or attempting to enforce, within the state of California paragraphs 7
        and 8 of the Employment Agreement entered into between [Ivy and Marcelo]
13      on December 14, 2009 against [Marcelo] relating to [Marcelo's] efforts that
        have occurred or may occur in California.
14

15  First, Ivy believes the Court should concurrently review and consider Ivy's Motion to Dismiss

16  or Alternatively Stay this entire California action, while looking at Marcelo's request for

17  injunctive relief, because there is already a lawsuit pending on these exact same factual and

18  legal issues in the Eastern District of Virginia.  *See* DN-14 ("Motion to Dismiss").  Ivy believes

19  the law in this district and the Ninth Circuit are clear and its Motion to Dismiss will be granted

20  – rendering the Motion for TRO moot.  Second, and most importantly, Marcelo has not met any

21

22

23

24

25  _____

26  [1] What federal courts designate as a "Preliminary Injunction" is called a "Temporary Injunction" in Virginia.  *See* Virginia Code § 8.01-628.  The same type of notice and opportunity for the other side to be heard is required before a Virginia court grants a "Temporary Injunction," and there is no equivalent of a federal Temporary Restraining Order under Fed. R. Civ. P. 65(b) in *Virginia, i.e.*, allowing for *ex parte* relief that expires after ten days.

27  [2] Marcelo removed the Virginia state court action to the U.S. District Court for the Eastern District of Virginia based on diversity on November 4, 2010.  All arguments as to why this Court should dismiss the California action still apply as to the Virginia lawsuit even though it is now in federal court.

28

1    of the prerequisites under FED. R. CIV. P. 65 that are necessary for this Court to grant a Motion

2    for TRO, and, therefore, this motion should be denied.[3]

3    ## II.    PROCEDURAL BACKGROUND

4        On September 10, 2010, Ivy filed its First Amended Verified Complaint,[4] *see* Ex. 1,

5    Motion for Temporary Injunction, *see* Ex. 2, and Memorandum in Support, *see* Ex. 3 against

6    Marcelo in the Circuit Court of Henrico County, Virginia, seeking to enforce Marcelo's non-

7    competition, non-solicitation of employees and customers, and non-disclosure of confidential

8    information obligations under her Employment Agreement with Ivy, a Virginia corporation.

9    The Employment Agreement provides that it is governed by Virginia law and that a court in

10   Henrico County, Virginia shall be the exclusive venue for any disputes arising from it.  *See* Ex.

11   4 ("Employment Agreement") ¶¶ 14, 19.  The parties made the Employment Agreement in

12   Virginia after negotiations on various issues on December 14, 2009.  *See id.* ¶ 14.

13       After giving Marcelo and her Virginia counsel multiple notifications of the hearing date

14   for the Temporary Injunction and copies of all pleadings, a Temporary Injunction hearing was

15   held in front of the Hon. Burnett Miller III on September 27, 2010.  Marcelo's Virginia counsel

16   was present and had previously filed a motion to dismiss based on Ivy's alleged failure to

17   properly serve Marcelo *and* based on Virginia's lack of personal jurisdiction over Marcelo.

18   After holding an evidentiary hearing, where witnesses provided testimony, the Court ruled

19   against Marcelo from the bench on both procedural points, most notably finding that it did, in

20   fact, have personal jurisdiction over Marcelo due to her numerous minimum contacts with

21   Virginia – which included, among other things, attendance at two extensive training sessions in

22   Virginia with Ivy and she was directly managed by an Ivy Virginia-based employee.  After

23   _____

24   [3] Ivy agrees with Marcelo that there are some overlapping issues in the Motion for TRO and the Motion to Dismiss,
     but this is solely because Marcelo, in her Motion for TRO, preemptively addressed arguments that she anticipated
25   were coming in Ivy's Motion to Dismiss.  These arguments were appropriate for Marcelo's response to the Motion
     to Dismiss – not her Motion for TRO.  In fact, Marcelo spends seven of her eighteen pages of her Motion for TRO
26   arguing points appropriate for a response to Ivy's Motion to Dismiss.  *See* DN-7 at 12-18.  Ivy had no choice but to
     address these arguments in its Motion to Dismiss.  But the Motion for TRO is a separate procedural motion that the
27   Court decides under a different standard than the Motion to Dismiss.  Furthermore, Ivy will respond to arguments in
     this response to the Motion for TRO, namely that Marcelo has not met the standard required in FED. R. CIV. P. 65,
28   which were not addressed in its Motion to Dismiss.  Therefore, separate briefing is necessary for each motion.
     [4] Ivy filed the original Complaint in this matter with the Henrico Circuit Court on September 7, 2010.

1    hearing all of the evidence and both sides' arguments regarding same, the Court entered a

2    Temporary Injunction against Marcelo enjoining her from violating the terms of her

3    Employment Agreement.  *See* Ex. 5. ("Temporary Injunction").

4            In an effort to circumvent the established jurisdiction of the Virginia court, the terms in

5    the Employment Agreement, and the parties' intent to have Henrico County, Virginia as the

6    exclusive jurisdiction for disputes arising out of the Employment Agreement, Marcelo filed a

7    complaint in California state court on October 12, 2010.  *See* Ex. 6 ("California Complaint").[5]

8    Marcelo simultaneously filed an *ex parte* application for an order to show cause regarding a

9    preliminary injunction and a temporary restraining order.  *See* Ex. 7 ("Application for

10   Injunctive Relief").  Both the California Complaint and the Application for Injunctive Relief

11   sought to have the Employment Agreement declared unlawful under California law, *see* Ca.

12   Compl. ¶¶ 36-41, *and* asked the California court to enjoin Ivy from enforcing its Temporary

13   Injunction issued by the Virginia court -- **even though Ivy has taken no steps to do so in**

14   **California**.  *Id.* ¶ 46 (emphasis added).  The California action involves the same parties,

15   addressing the same Employment Agreement—and the exact same underlying facts—already

16   being fully litigated in the Virginia action.  **Despite asserting the need for expedited**

17   **injunctive relief, Plaintiff's California Complaint was filed fifteen days <u>after</u> the Virginia**

18   **state court issued the Temporary Injunction against Marcelo and over a month after Ivy**

19   **first filed its complaint in Virginia.**

20           On, October 27, 2010, Marcelo filed this Motion for TRO.  *See* DN-4.  Marcelo asks

21   that this Court enjoin Ivy from enforcing, or attempting to enforce, within the state of

22   California, paragraphs 7 and 8 of the Employment Agreement, relating to any of Marcelo's

23   efforts (presumably to violate paragraphs 7 and 8 of the Employment Agreement) that have

24   occurred or may occur in California.  *See id.* at Tendered Order.[6]  Marcelo erroneously claims

25

26

27   [5] Ivy removed the California lawsuit to federal court the following day, October 13, 2010.  *See* DN-1.

28   [6] Marcelo has backed off its requests of asking a California federal district court to enjoin Ivy from enforcing the Temporary Injunction issued by the Virginia state court, although it <u>is implicit in its request.</u>

that Ivy "is seeking to enforce within the state of California" the non-compete and non-solicitation provisions of the Employment Agreement when Ivy, to date, has done no such thing. *Id.* at 2. Marcelo quickly glosses over the fact that a Temporary Injunction has already been issued by Judge Miller in Henrico Circuit Court, but affirmatively misleads this Court when she acts as if she does not know what it says – Marcelo was represented by counsel at the Temporary Injunction hearing and her counsel has received a copy of the Temporary Injunction – putting her on notice of exactly what she is prohibited from doing.

On November 3, 2010, Ivy filed its Motion to Dismiss the California action pending complete adjudication of the Virginia action. DN-14. Ivy incorporates all arguments made in that brief.

### III.    SUMMARY OF RELEVANT FACTS

On or about December 14, 2009, Ivy entered into an Employment Agreement with Marcelo to employ her as a community educator. *See* Employment Agreement. This job included acting as marketing representative for imaging at one of Ivy's clients, Seton Medical Center in Daly City, California ("Seton"). *See* Am. Compl. ¶ 6. As a community educator and marketing representative, Marcelo enjoyed a special position of trust and confidence with Ivy. *Id.* ¶ 12. In this managerial position, Marcelo was provided with highly sensitive confidential and proprietary information about existing Ivy customers and employees, and she was provided access to existing customers and employees in order to develop relationships and establish trust and reliance on their knowledge and judgments. *Id.* ¶ 14. Marcelo had daily contact with Ivy's customers and employees, developing experience and skills as a marketing representative of imaging. *Id.* ¶ 15.

In the Employment Agreement, Marcelo agreed to the Non-Disclosure of Confidential

Information, *see* Employment Agreement ¶ 6,[7] a Covenant Not to Compete, *id.* ¶ 7, the Non-Solicitation of Clients, *id.* ¶ 8, and the Non-Solicitation of Employees. *Id.* ¶ 10. During Marcelo's employment with Ivy, she gained intimate knowledge of Ivy's customer and employee base, customer and employee lists and identities, and employees' personal information, including email addresses and phone numbers. *See* Am. Compl. ¶ 16. Marcelo was privy to Ivy's customer account information, customer agents and account managers, marketing methods, employee handbooks and manuals, written financial information, business plans, and other confidential and proprietary information not known to the general public (collectively referred to as "trade secrets"). *Id.* All of the trade secrets Marcelo knew or to which she had access were at all times deemed to be highly confidential by Ivy and acknowledged to be the same by Marcelo in her Employment Agreement. *Id.*

### A. Virginia Court's September 27, 2010 Decision.

As explained above, after an evidentiary hearing before the Virginia state court, where Marcelo was represented by Virginia counsel and had filed a motion to dismiss, a Temporary Injunction was entered against Marcelo. The Virginia court found that Marcelo was subject to the personal jurisdiction of the Virginia court, based on the forum selection clause and based on her minimum contacts with Virginia. First, under Virginia law, the forum selection provision in the Employment Agreement valid and enforceable. *Paul Bus. Sys., Inc. v. Canon U.S.A., Inc.*, 240 Va. 337, 397 S.E.2d 804, 807 (1990). Second, the provision was sufficiently exclusive. The Employment Agreement states:

---

[7] By agreeing to the Non-Disclosure of Confidential Information in the Employment Agreement, Marcelo admits that the information provided to her has a significant competitive and proprietary nature to it and is extremely valuable to Ivy. *See* Am. Compl. ¶13. Marcelo is aware that the non-disclosure of this non-public information about Ivy and its clients is required, is the property of Ivy, and is essential to the protection of Ivy's goodwill and the maintenance of its competitive position. *See id.* ¶ 12. She agreed that the information was confidential and proprietary, and, therefore, is required to be kept secret both during and subsequent to any termination of her employment with Ivy. S*ee* Employment Agreement ¶ 6(a)-(c).

19.    <u>Forum Selection.</u> The parties agree that the **exclusive** venue for the resolution of any dispute arising from the provisions of this Agreement shall lie with any court of competent jurisdiction in Henrico County, Virginia.  (Emphasis added).

Third, and even without the forum selection clause, the Virginia court determined that there were sufficient minimum contacts between Marcelo and Virginia for personal jurisdiction under the long arm statute to be established.[8]

The Virginia Circuit held that Ivy had met its burden in showing that a temporary injunction should be entered based on Marcelo's violations of the Employment Agreement, and that Marcelo was enjoined from:

a.  using, disclosing or making available to anyone Ivy's confidential and proprietary information in violation of the Non-Disclosure of Confidential Information provision, including all confidential and proprietary information forwarded by Defendant to her personal email account, and an order requiring Defendant to return any and all of Ivy' confidential and proprietary information that she misappropriated;

b.  violating the   Non-Solicitation of Clients provision, including   (i) a prohibition on communication, soliciting or contacting in any way current or potential clients or customers, stating or implying that they should terminate or curtail its relationship with Ivy, or enter into a relationship with another person or entity to perform the services provided by Ivy;

c.  violating the Non-Solicitation of Employees provision, including (i) a prohibition on communication or contacting in any way current Ivy employees, stating or implying that they should leave Ivy for any reason;

d.  violating the Covenant Not to Compete provision by, directly or indirectly, competing with Ivy by providing or offering Competitive Services anywhere within fifteen (15) miles of the location of any Ivy client at which, or with respect to which, Defendant provided services on behalf of the Ivy.  Activities prohibited hereby shall include providing Competitive Services, either as an individual, as a partner, as a joint venturer with any other person or entity, or as an employee, agent, director, officer, consultant, independent contractor or representative of any other person or entity, or otherwise being associated with any person or business entity

---

[8] The Virginia court determined that long-arm statute could reach Marcelo, as Marcelo had the following minimum contacts with Virginia: (1) Employment Agreement with Virginia employer, that was created in Virginia, executed in Virginia, and had terms negotiated by Marcelo with her supervisors in Virginia; (2) all of Marcelo's supervisor and support staff were all located in Virginia; and (3) Marcelo visited Virginia at least two times for training at her employer, Ivy; first in December 2009, for 3 to 4 days in Henrico County, Virginia during which she received all the proprietary information that she misappropriated by sending to her personal email address two days after she resigned from Ivy; and again in March 2010, for an additional 3 to 4 day training in Henrico County, Virginia.

that offers or provides Competitive Services. "Competitive Services" shall mean services that are (i) substantially similar to the services provided by Employee to, or on behalf of, the Company while employed by the Company, and (ii) offered or provided to any person or entity that is engaged in the business of owning, operating, managing, marketing or providing consulting services to hospitals, diagnostic imaging facilities or other outpatient services.

*See* Temp. Inj. ¶ 3.  The Virginia Court ordered Marcelo to refrain from the enjoined behaviors for six months, or until such time that there shall be a final trial on the merits and/or a hearing for permanent injunction, whichever occurs first.[9]

**B.  Misstatements Made in Marcelo's Motion for TRO.**

Marcelo made numerous misstatements in her Motion for TRO (and memorandum in support) that the Court would no doubt want to be aware of before considering the sort of extraordinary, extrajudicial relief that she requests.  First, Marcelo continues to state she has not been served in the Virginia action.  *See* DN-6-2 ("Marcelo Declaration") ¶¶ 14.  This is unequivocally false.  After both her Virginia and California counsel refused to accept service, and after trying to personally serve her at least three times, and emailing both Marcelo and her counsel all relevant pleadings, service was finally effectuated via the Virginia Secretary of State on October 5.  *See* Ex. 8 ("Certificate of Compliance from Virginia Secretary of State").  As to whether or not Marcelo personally received the injunction, her Virginia counsel was present when the Court entered the injunction and was mailed the injunction by the Virginia court.  Furthermore, Marcelo admits that Ivy tried to serve her with the injunction but for some reason she never accepted service.  *See* Marcelo Decl. ¶ 26.

Second, Marcelo continues to represent to the California court that she is not subject to suit in Virginia.  *See* DN-7 at 2, 6 ("Defendant's institution of a lawsuit in Virginia (where Plaintiff is not appropriately subject to suit)…").  This is false.  In fact, Judge Miller specifically

---

[9] Notably, the Virginia court **did not** decide the choice of law issue at the hearing for the Temporary Injunction. Therefore, Marcelo's continued assertion that the Virginia court has not adequately considering California's laws and public policy in the choice of law analysis are erroneous and premature.

found, after holding an evidentiary hearing on the same, that there was personal jurisdiction over Marcelo in Virginia and that the lawsuit was properly before him in that court.

Third, Marcelo erroneously states that the Employment Agreement between Marcelo and Ivy was boilerplate and was in no way negotiated by Marcel.  DN-7 at 21("[Ivy] presented [Marcelo] with a boilerplate, non-negotiable Employment Agreement, and [Marcelo] was required to agree to those terms to commence employment.").  This is completely false, as Marcelo negotiated with Ivy, and the Employment Agreement was changed reflecting her negotiations, including additional salary and vacation time.  *See* Ex. 9 (Correspondence from Marcelo to Ivy regarding changes she wanted in Employment Agreement and marked up Employment Agreement from Marcelo).  The Employment Agreement was not boilerplate and simply accepted by Marcelo.

## IV.     STANDARD FOR GRANTING TEMPORARY RESTRAINING ORDER

The purpose of a TRO is to preserve the status quo before a preliminary injunction hearing may be held; its provisional remedial nature is designed merely to prevent irreparable loss of rights prior to judgment. *See Granny Goose Foods, Inc. v. Bhd. of Teamsters &Auto Truck Drivers*, 415 U.S. 423, 439 (1974) (noting that a TRO is restricted to its "underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer").  As such, a plaintiff may obtain a TRO only where he or she can demonstrate "immediate and irreparable injury, loss or damage." Fed. R. Civ. P. 65(b); *see also Caribbean Marine Serv. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).  Speculative injury is insufficient to support a finding of irreparable harm sufficient to warrant granting a preliminary injunction or TRO.  *Carribean Marine Servs.*, 844 F.2d at 674.  A plaintiff must do more than merely allege imminent harm to establish standing -- a

plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief. *Id.*

The standard for issuing a TRO is similar to the standard for issuing a preliminary injunction. *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). The Ninth Circuit has stated that a party seeking a temporary restraining order or preliminary injunctive relief must meet one of two tests. *Martin v. International Olympic Committee*, 740 F.2d 670, 674-675 (9th Cir. 1984). Under the first, a court may issue a preliminary injunction if it finds that: (1) the moving party will suffer irreparable harm if injunctive relief is not granted, (2) the moving party will probably prevail on the merits, (3) in balancing the equities, the non-moving party will not be harmed more than the moving party is helped by the injunction, and (4) granting the injunction is in the public interest. *Id.* (internal quotations and citations omitted); and *Stanley v. Univ. of Southern California*, 13 F.3d 1313, 1319 (9th Cir. 1994). Under the second, the movant must show "either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) the existence of serious questions going to the merits, the balance of hardships tipping sharply in its favor, and at least a fair chance of success on the merits." *Miller v. California Pacific Medical Center*, 19 F.3d 449, 456 (9th Cir. 1994) (en banc). This alternative test is on a sliding scale: the greater the likelihood of success, the less risk of harm must be shown, and vice versa. *Id.* And while a showing of serious questions on the merits is a lower standard than showing probable success, Marcelo nonetheless must demonstrate at least a "fair chance of success." *Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935, 937 (9th Cir. 1987).

The grant or denial of a TRO or a preliminary injunction is a matter of the court's discretion exercised in conjunction with the principles of equity. *See Inland Steel v. U.S.*, 306 U.S. 153 (1939); *Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940); and *Stanley*, 13

F.3d at1313.  Despite this discretion, injunctive relief is not obtained as a matter of right and is considered an extraordinary remedy that should not be granted unless the movant, by a clear showing, carries the burden of persuasion. *See Sampson v. Murray*, 415 U.S. 61 (1974); *Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas R. Co.*, 363 U.S. 528 (1960); and *Stanley*, 13 F.3d at1313.

In considering the Motion for TRO, the "weight to be given such evidence is a matter for the Court's discretion, upon consideration of the competence, personal knowledge and credibility of the affiant." *Bracco v. Lackner*, 462 F. Supp. 436, 442 n.3 (N.D. Cal. 1978) (reviewing motion for preliminary injunction); *see also Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*, 762 F.2d 1374, 1377 (9th Cir.1985) (explaining that when considering a motion for TRO or preliminary injunction the "weight to be given each [affiant's] statement[] is in the discretion of the trial court"). The Court, therefore, should review all the submitted evidence and give each affidavit and exhibit the consideration it deserves and will not assume Marcelo's assertions in her California Complaint or Motion for TRO are true.

## V.     ARGUMENT

### A.  Marcelo Has Not Met The Prerequisites of FED. R. CIV. P. 65(a).

#### i.  *Marcelo has not sufficiently alleged immediate harm.*

Marcelo continues to assert she needs emergency relief from the Court in the form of a TRO preventing Ivy from enforcing its Employment Agreement in California.  Ignoring that Ivy is not attempting to enforce the Employment Agreement in California, the "imminence" of Marcelo's alleged harm is feigned, as she (1) resigned her employment with Ivy (and well aware of the Employment Agreement's prohibitions at that point) effective August 31, 2010 – over two months ago; (2) the Virginia lawsuit was initiated against her on September 7, 2010 – over seven weeks before she filed the Motion for TRO with this Court; (3) Judge Miller entered the Temporary Injunction on September 27, 2010 – over a month before she filed the Motion for TRO; and (4) the California complaint was removed to federal court on October 13, 2010 –

two weeks before she filed the Motion for TRO.  **How can Marcelo possibly claim she needs immediate relief in the form of a TRO when she has waited so long to ask for the same?** Ivy's position on the Employment Agreement has not changed since she resigned in August – Marcelo's two month delay in asking for relief undermines her "imminence" argument.

Second, Marcelo also claims she needs "immediate" relief so she can compete against Ivy for a contract at the Ivy customer where she worked, Seton.  Marcelo claims Ivy's contract with Seton expires in October 2010, so it imperative that she be able to compete at this time. What Marcelo completely fails to inform the Court of, however, is that she misappropriated trade secrets and confidential information from Ivy that can be used to compete against it for the Seton contract in violation of California law.  In fact, the likely way that Marcelo knows of the date of renewal of the Seton contract is that she has a copy of the same – which she did not have access to in the course of her employment.   It is confidential, and Ivy did not share this with her.  Ivy has no idea what other information Marcelo has misappropriated, but based on the two emails that Ivy is aware of, Marcelo has all of the documents necessary to set up a competing business.  Ivy believes that upon reviewing Marcelo's hard drive and personal email account, there will likely be additional information that she misappropriated in order to be able to compete against Ivy using its own trade secrets.

Marcelo has given no good explanation, why, exactly, she forwarded highly sensitive confidential information to her home email address two days after resigning with Ivy.  Marcelo glosses over the fact that even in California, which again, is not the appropriate forum for the disputes between the parties, courts will enforce non-compete provisions to the extent that the employee is using its misappropriated employer's confidential information and trade secrets to do so – which is exactly what Marcelo intends to do.  *See Loral Corp. v. Moyes,* 174 Cal. App. 3d 268, 275 (Cal. App. 6th Dist. 1985) ("The misuse of trade secrets may include solicitation of an employer's customers when confidential information is employed."); *Hollingsworth*

*Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1338-39 (9th Cir. 1980) (recognizing that a covenant prohibiting unfair competition or the use of confidential information is enforceable despite section 16600); *Jett v. Eco-Air Prods.*, CV 07-1159 PA, 2007 U.S. Dist. LEXIS 50811 (C.D. Cal. June 4, 2007).   Therefore, granting Marcelo's Motion for TRO will not prevent immediate harm to Marcelo because she should not be able to compete for the Seton contract since she misappropriated trade secrets from Ivy.  In fact, if the TRO is granted, it will cause immediate harm to Ivy in maintaining its trade secrets and confidential information.

> ### ii.   Marcelo has not sufficiently alleged irreparable harm.

Marcelo makes much of the "irreparable" harm that she will suffer if the TRO Application is not granted.[10]  Marcelo claims that without a TRO in place, she cannot "obtain lawful employment in her field, marketing of health care services" in the entire state of California.  DN-7 at 5.  Again, even if Ivy tried to enforce the Employment Agreement's non-compete provision in California, which it has not done, Marcelo would not be wholly prevented from working in the healthcare industry in California.  This is a vast overstatement of the

---

[10] Marcelo argues that the "impending violation of California law and policy by itself constitutes irreparable harm justifying the grant of prompt injunctive relief."  DN-7 at 13.  Marcelo provides no support for this broad sweeping assertion.  Furthermore, and as discussed above, an "impending" violation of the law is not appropriate for injunctive relief – the irreparable harm cannot be speculative and by its very nature Marcelo's claim that Ivy is "going to" enforce the Employment Agreement in California, and *then* she will then be injured, is completely speculative.  Marcelo's claims are more appropriate for a declaratory action, not a motion for injunctive relief, which Ivy also pointed out in its Motion to Dismiss.  DN-14 at 24-25 ("Marcelo is relying solely on a declaration that the clauses are unlawful—a defense to Ivy's Virginia claims—in order to prove her § 17200 case.  The entire action should therefore be dismissed as a declaratory action.  *Golden Eagle* v. *Travelers Cos.*, 103 F.3d 750, 755 (9th Cir. 1996) ("Golden Eagle's request for monetary relief is wholly dependent upon a favorable decision on its claim for declaratory relief.  The action is plainly one for declaratory relief.") (internal citation omitted); *see also St. Paul Fire & Marine Ins. Co. v. Nonprofits United*, 91 Fed. Appx. 537, 538 (9th Cir. 2004) ("Because St. Paul's claim for equitable relief, indemnity, and contribution is contingent on a future finding that St. Paul is liable to Nonprofits in the pending state court proceeding, the cause of action is not ripe and is not 'independent in the sense that it could be litigated in federal court even if no declaratory claim had been filed.'") (citation omitted); *Keown v. Tudor Ins. Co.*, 621 F. Supp.2d 1025, 1036 (D. Haw. 2008) ("Without a declaration of rights under the subject policy, the request for a declaration that Marcelo must pay for Plaintiff's attorneys' fees and costs incurred in defending against the underlying action could not exist alone.  Therefore, … the instant action is declaratory in nature …."); *Schmitt v. JD Edwards World Solutions Co.*, No C 01-1009, 2001 U.S. Dist. LEXIS 7089, *7-8 (N.D. Cal. May 18, 2001) (dismissing allegations of waiver and estoppel made with declaratory judgment action because they were defenses to the claims in the other action).").

restrictive covenants, and in reality what Marcelo cannot do under the Employment Agreement is compete against Ivy at the very Ivy client, Seton, at which she worked,[11] or its competitors in a 15-mile radius, providing the narrow range of services that she provided at Seton.  The Court need only look at the definition of "Competitive Services" in the Employment Agreement to see that Marcelo's claim that she cannot do any "marketing of healthcare services" in the entire state of California, is simply false.  *See* Employment Ag. ¶ 7(c).

Furthermore, Marcelo has not demonstrated irreparable injury because the relief sought is to protect purely economic monetary harm, and such is not a proper basis for a TRO when there has been no showing that Ivy will not be able to pay economic damages if Marcelo's claims are successful.  *See, e.g., Oakland Tribune, Inc.*, 762 F.2d 1374, 1376 (9th Cir. 1985).  "It is well established . . . that such monetary injury is not normally considered irreparable." *Los Angeles Memorial Coliseum Comm'n. v. National Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980). Therefore, to prevail on the Motion for TRO, Marcelo must demonstrate that an award of damages would be "seriously deficient as a remedy for the harm suffered." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir.1984). While calculating damages may be difficult, damages are regularly awarded to rectify this type of harm and any monetary injury to Marcelo by Ivy can be quantified when damages, if any, are determined. *See Sky Star Moon & Universe Trust v. HSBC Bank USA,* Case No. CV10-234-S-EJL, 2010 U.S. Dist. LEXIS 45991 (D. Idaho May 11, 2010).  Therefore, the Court should find that damages would provide an adequate remedy, and the request for a TRO should be denied because there are no "irreparable" injuries to Marcelo.

---

[11] Ivy knows Marcelo misappropriated confidential trade secrets from Ivy while still employed there but two days after she gave her resignation and two weeks' notice.  Ivy has reason to suspect Marcelo misappropriated confidential information about Seton while working at Ivy in order to compete against Ivy for this contract.

*iii.   Marcelo will neither be successful on the merits nor are there serious questions as to the merits.*

As discussed in detail in Ivy's Motion to Dismiss, and incorporated by reference herein, Ivy will be successful both in having this lawsuit heard in the appropriate chosen forum only *and* will be successful as to the underlying merits of this case.   Ivy's moved to dismiss Marcelo's California Complaint because the appropriate forum for this dispute was agreed to by the parties, and, in fact, a lawsuit has already been filed and litigation started in that forum – the Commonwealth of Virginia.  District courts in the Ninth Circuit have already looked at and decided this issue, and this Court should follow the well-reasoned holdings in *Swenson v. T-Mobile USA, Inc.*, 415 F. Supp.2d 1101, 1105 (S.D. Cal. 2006) (dismissing federal court action for declaratory relief due to enforceable forum selection clause) and *Google, Inc. v. Microsoft Corp.*, 415 F. Supp.2d 1018, 1020 (N.D. Cal. 2005) (holding a federal court should stay declaratory relief if there is a parallel state court suit deciding the same issue).   Both of these cases have strikingly similar facts as what has occurred here, and Ivy is aware of no cases interpreting them in the employment context in which a California court has not dismissed or stayed the federal California action.

The Employment Agreement between the parties dictates that Virginia, not California, is the proper and exclusive venue for this action.  Ivy has little doubt that this Court will follow precedent and dismiss this action, or in the alternative, stay this action pending resolution of the earlier filed Virginia suit because to do otherwise would reward Marcelo's forum shopping and would "potentially waste judicial resources."  *Google*, 415 F. Supp.2d at 1021-22.  Ivy has only seen Marcelo's preemptive arguments opposing the Motion to Dismiss as set out in her Motion for TRO.  However, none of those arguments should change the Court's conclusion and all are appropriately addressed and distinguished in the Motion to Dismiss.

As to the merits of the underlying lawsuit in Virginia, regardless of whether the Virginia court chooses to apply Virginia (as the parties agreed to in the Employment Agreement) or California law, Ivy will be successful as to a permanent injunction on both fronts.   The Virginia court has already held that a six month Temporary Injunction was

appropriate considering Marcelo's actions in misappropriating trade secrets and soliciting employees and customers – likely by using the same.  This analysis necessarily included am inquiry into Ivy's likelihood of success on the merits.  Now based on Marcelo's admitted intent that she plans to try and take Ivy's customer – all the while having Ivy's confidential and trade secret information – there is little doubt that Ivy will ultimately be successful – even if California law applies.  Finally, in *Sky Star Moon*, 2010 U.S. Dist. LEXIS 45991, the district court practically held that it was "not in the practice of issuing a temporary restraining order on a…matter when there is a related state court matter and [one party has] not had an opportunity to be heard on [the other party's] allegations."  This Court should do the same.

> iv.  *Marcelo's injury is speculative, as Ivy is not attempting to enforce the Covenant Not to Compete or the Preliminary Injunction issued by the Virginia State Court against Her.*

Marcelo alleges numerous times that Ivy is attempting to enforce the non-solicitation and non-compete provisions of the Employment Agreement, *vis-a-vis* its Virginia Temporary Injunction, in California.  *See*  DN-4 at 3, Marcelo Decl. ¶ 26, DN-7 at 13, 15.[12]  But Ivy has taken no steps to enforce the non-solicitation or non-compete provisions of the Employment Agreement in California, nor has it moved to domesticate its Virginia injunction in California.  Ivy has no intention to do so.  For this reason alone, Marcelo's entire Motion for TRO should be denied, as a speculative injury is insufficient to support a finding of irreparable harm sufficient to warrant granting a preliminary injunction.  *Carribean Marine Servs.*, 844 F.2d at 674.  Ivy's motion is simply not ripe for adjudication.

---

[12]  Marcelo's Memorandum for TRO states that "Ivy threatened to move for contempt if Ms. Marcelo sought employment within the 30-mile diameter prohibited area or otherwise contrary to the terms of the unlawful non-compete provisions."  DN-7 at 8.  Although it is well within its rights to do so in Virginia if Marcelo violates the Temporary Injunction, Ivy has never threatened to file for contempt based on Marcelo's actions in seeking employment.  Instead, Ivy threatened to file a motion for contempt when Marcelo did not return its confidential and proprietary information that she misappropriated, within the time ordered by Judge Miller in the Temporary Injunction.

Furthermore, the *real* "injury" Marcelo seeks to avoid – having the Virginia court adjudicate this dispute and apply Virginia law as the parties agreed to do in the Employment Agreement – is also speculative at this stage in the litigation.  It is unclear if Virginia court will take action on Marcelo's pending demurrer and whether or not the Court will chose to apply Virginia or California law.  It is not proper for Marcelo to file an action in California court regarding the same claims presented in the Virginia court.  *Sky Star Moon & Universe Trust*, 2010 U.S. Dist. LEXIS 45991.  There are limited judicial resources and Marcelo has not established why she would be unable to proceed on her defenses and counter-claims in the Virginia court action.  *Id.*

> v.   *Ivy will be more harmed than Marcelo if this injunction is granted.*

Unlike Marcelo's speculative harm, Ivy has a real concern that if this Court grants this TRO, Marcelo will use its proprietary and confidential trade secret information that she misappropriated to obtain the contract with Seton, Ivy's customer.  Furthermore, Marcelo can use the information she misappropriated to compete against Ivy, as she has everything she needs to start a competitive business.  The potential loss to Ivy – of actual customer contracts and its own confidential information and trade secrets being used to compete against it – far outweighs Marcelo's alleged harm.

> vi.   *Granting this injunction is not in the public interest.*

Marcelo's TRO—if granted—would clearly go against the public interest.   First, entertaining the request for a TRO will constitute a waste of judicial resources.   Another proceeding, in which the identical issues are being litigated, is already pending in Virginia.  That action is the broader of the two proceedings—it involves claims for breach of contract based on the non-compete covenant, two forms of non-solicitation covenants, and a non-disclosure covenant, breach of fiduciary duty and duty of loyalty, misappropriation of trade secrets and confidential information, and tortious interference with existing and prospective business relations.  *See* Am. Compl.  This action, on the other hand, focuses entirely on the validity of the

1    non-compete covenant and customer non-solicitation covenant.  *See* California Compl. ¶¶ 38, 41,

2    45.

3    The court in the Virginia action has already held one lengthy evidentiary hearing and

4    issued a Temporary Injunction against Marcelo, enjoining her from violating the terms of her

5    Employment Agreement.  That litigation has therefore proceeded to a much more mature state.

6    This action, which is essentially one for declaratory relief, should therefore be dismissed.  *See,*

7    *e.g.*, *DeFeo v. Proctor & Gamble Co.*, 831 F. Supp. 776, 780 (N.D. Cal. 1993) (dismissing

8    earlier filed declaratory judgment action due to existence of state court suit in order avoid making

9    needless decisions of state law, to discourage forum shopping, and to avoid duplicative

10   proceedings); *Continental Casualty Co. v. Fibreboard Corp.*, No. C 91-2002, 1992 U.S. Dist.

11   LEXIS 502, *7-8 (N.D. Cal. Jan. 8, 1992) (dismissing declaratory relief action due to pending

12   federal court proceeding "in order to preserve judicial resources and prevent a multiplicity of

13   rulings").

14   Second, the TRO that Marcelo seeks is in direct contradiction to the already granted

15   Temporary Injunction issued by the court of the contractually selected venue.  Granting the TRO

16   would therefore not only constitute a waste of judicial resources, but would also create

17   inconsistent judgments on an identical issue.  And by in effect overruling the order of the

18   Virginia state court, it would also infringe on that court's jurisdiction.  These are the exact issues

19   that federal courts attempt to avoid when declining to rule in such actions.  *Am. Nat'l Fire Ins.*

20   *Co. v. Hungerford*, 53 F.3d 1012, 1018-19 (9th Cir. 1995), *overruled on other grounds by Gov't*

21   *Employees Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998) ("[E]ven if the declaratory judgment

22   would clarify the nature of the legal relationship at issue, such clarification would only come at

23   the cost of increasing friction between state and federal courts, and would constitute an improper

24   encroachment on state court jurisdiction.") [13]; *Fibreboard Corp.*, *supra*, 1992 U.S. Dist. LEXIS

25   502, *7-8.  Granting Marcelo's TRO is therefore clearly against in the public interest.

26   _____

27   [13] Marcelo recently moved to remove the Virginia action to Virginia federal court, but the Temporary Injunction
     nonetheless remains in place. *Jenkins v. Commonwealth Land Title Ins. Co.*, 95 F.3d 791, 795 (9th Cir. 1996); 28
28   U.S.C. § 1450.

1

*vii. Plaintiff misstates the status quo.*

2

Finally, Marcelo also claims that she seeks the TRO preventing Ivy from enforcing

3

certain provisions in the Employment Agreement in order to "maintain the status quo and

4

continue to earn her livelihood during the time leading to a trial on the merits." DN-7 at 5.  But

5

Marcelo is mistaken, as the status quo is for this Court to allow for the litigation in Virginia to

6

proceed – where jurisdiction is proper and litigation has already began.  Changing the status quo

7

would be this Court in any way effectuating change to Judge Miller's Virginia Temporary

8

9

Injunction.

10

**B.  Marcelo Misappropriated Confidential Information and Trade Secrets in Order to Compete Against Ivy.**

11

12

Marcelo has three goals in this litigation: the ability to solicit Ivy's customers, the ability

13

to solicit Ivy's employees, and the ability to compete with Ivy.  Am. Compl. ¶¶ 31-33.[14]  Marcelo

14

seeks to carry out these activities through the use of Ivy's confidential information and trade

15

secrets, *id.* ¶¶ 16, 25-29, and will in fact use such information if the Court grants her TRO.  DN-7

16

at 5.  But contrary to Marcelo's assertions, this conduct can be and is prohibited under California

17

law.  Marcelo fails to mention in any of her pleadings that she misappropriated confidential

18

information and trade secrets from Ivy in order to compete against it.  This sort of "competitive"

19

behavior is not tolerated in California even in light of § 16600.

20

Employers can, notwithstanding § 16600's prohibition, lawfully prevent former

21

employees from misappropriating trade secrets and confidential information to the detriment of

22

the employer.  *Loral Corp. v. Moyes*, 174 Cal. App. 3d 268, 275 (1985) ("Generally the law of

23

unfair competition prohibits former employees from disclosing or misusing an employer's trade

24

secrets and confidential information—even in the absence of contractual restrictions." (citing

25

*Empire Steam Laundry v. Lozier*, 165 Cal. 95, 99 (1913))); *see also Klamath-Orleans Lumber,*

26

27

[14] Although Marcelo only argues against enforcement of Paragraphs 7 and 8, it is clear that she is seeking the ability to compete with Ivy free from *any* restrictions in the Agreement.  DN-7 at 5.

28

1   *Inc. v. Miller*, 87 Cal. App. 3d 458, 464 (1978).   In addition, employment agreements that

2   prohibit the solicitation of employees are enforceable.   *Moyes*, *supra*, 174 Cal. App. 3d at 279-80

3   (upholding contractual provision that prohibited solicitation of employees for one year).

4          As an employee of Ivy, Marcelo had access to a large volume of Ivy's confidential and

5   trade secret information.  Am. Compl. ¶ 16.  She sought to use that information, through, among

6   other things, misappropriating at least twenty five of Ivy's confidential and highly proprietary

7   work product documents.  *Id.* ¶¶ 25-28.  These tools are very valuable to Ivy—they were designed

8   to create value to its clients, were developed by Ivy over the course of many years as it developed its

9   business, *id.* ¶ 28, and constitute a material portion of the analytical tools used by Ivy to assess

10  and measure clients' metrics.  *Id.* ¶ 29.

11         Paragraph 6 of the Agreement makes it clear that Marcelo is not to use or disclose any of

12  Ivy's confidential information of which she learned or obtained during her employment.

13  Employment Agreement ¶ 6(b).[15]   That section is explicitly geared to protecting confidential and

14  trade secret information, and is thus enforceable notwithstanding § 16600.   *See, e.g.*, *Thomas*

15  *Weisel Partners LLC v. BNP Paribas*, No. C 07-6198, 2010 U.S. Dist. LEXIS 11626, *23 (N.D.

16  Cal. Feb. 10, 2010) (declining to invalidate contract provision geared towards use and disclosure

17  of confidential and trade secret information).   When read in conjunction with Sections 7 and 8,

18  the Employment Agreement lawfully prohibits her from competing with Ivy or soliciting its

19  customers[16] through the use of such information.   *See, e.g.*, *Moyes*, *supra*, 174 Cal. App. 3d at

20  275 ("The misuse of trade secrets may include solicitation of an employer's customers when

21  confidential information is employed." (citing *Empire Steam Laundry*, *supra*, 165 Cal. at 102));

22  *Morlife*, 56 Cal. App. 4th at 1519 ("While it has been legally recognized that a former employee

23  may use general knowledge, skill, and experience acquired in his or her former employment in

24  _____

25  [15] Paragraph 6(b) of the Agreement specifically defines information that is deemed to be confidential and thus protected.  Although a contractual designation is not binding, it is highly persuasive.  *Morlife, Inc. v. Perry*, 56 Cal.

26  App. 4th 1514, 1522 (1997).
    [16] Under California law, a contract prohibiting solicitation of customers can prohibit more than the trade secret law

27  and the law of unfair competition can alone.  *Moyes*, *supra*, 174 Cal. App. 3d at 275 ("Cases suggest that when permissible solicitation of an employer's customers is at issue, a contract may prohibit more than the law of the

28  marketplace otherwise would.") (citing *Continental Car-Na-Var Corp. v. Moseley*, 24 Cal. 2d 104, 111 (1944); RESTATEMENT (SECOND) OF AGENCY § 396, p. 223)).

1   competition with a former employer, the former employee may not use confidential information

2   or trade secrets in doing so.").  In addition, the misappropriation of confidential and trade secret

3   information can be prohibited even in the absence of covenants to that effect.[17]   *Moyes*, *supra*,

4   174 Cal. App. 3d at 275.   Marcelo therefore simply cannot prove the requisite likelihood of

5   success on the merits – as she would lose the underlying lawsuit because she cannot compete by

6   using Ivy's misappropriated confidential trade secrets.[18]   Her request for a TRO should therefore

7   be denied.

8                                                    **CONCLUSION**

9           For the foregoing reasons, Ivy respectfully requests that the Court deny Marcelo's

10  Motion for TRO.

11          DATED:  November 10, 2010                  Respectfully submitted,

12

13                                                By: /s/_____
                                                      LECLAIRRYAN LLP

14                                                    PETER M. HART (SBN 107920),
                                                      PETER.HART@LECLAIRRYAN.COM

15                                                    44 MONTGOMERY STREET, 18TH FLOOR
                                                      SAN FRANCISCO, CA 94104

16                                                    TEL: 415-391-7111
                                                      FAX: 415-391-8766

17                                                    ATTORNEYS FOR IVY VENTURES, LLC

18

19

20

21

22

23

24   _____

25   [17] Moreover, to the extent that this Court were to find any provision of the Agreement to be unenforceable under §
     16600, it should strike only the unenforceable language, leaving the lawful provisions intact.  *Thomas Weisel*
26   *Partners*, *supra*, 2010 U.S. Dist. LEXIS 11626, *21 (voiding only the unenforceable language while leaving the
     enforceable language intact).
27   [18] Although not specifically argued by Marcelo, the provisions of the Agreement prohibiting solicitation of Ivy's
     employees are also enforceable.  *Thomas Weisel Partners*, *supra*, 2010 U.S. Dist. LEXIS 11626, *12, 23.

28

1

## CERTIFICATE OF SERVICE

2

3          I hereby certify that on November 10, 2010, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system which will send a notification of electronic filing to the following:

4

**Byron Robert Chin**

5    Townsend and Townsend and Crew
     Two Embarcadero Center

6    8th Floor
     San Francisco, CA 94111

7    415-576-0200
     Fax: 415-576-0300

8    Email: brchin@townsend.com

9

**Mark T. Jansen**

10   Townsend and Townsend and Crew, LLP

11   Two Embarcadero Center, 8th Floor
     San Francisco, CA 94111

12   415-273-7550
     Fax: 415-576-0300

13   Email: mtj@townsend.com

14                                            By:/s/_____

15                                            LECLAIRRYAN LLP
                                              PETER M. HART (SBN 107920)

16                                            Peter.hart@leclairryan.com
                                              44 Montgomery Street, 18th Floor

17                                            San Francisco, CA 94104
                                              Tel: 415-391-7111

18                                            Fax: 415-391-8766

19                                            Attorneys for Ivy Ventures, LLC

20

21

22

23

24

25

26

27

28

PRINTED ON

RECYCLED PAPER

- 22 -
Ivy Ventures, LLC's Opposition to Plaintiff's
Motion for Temporary Restraining Order