United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MYRA MARCELO, a California resident,

    Plaintiff,

  v.

IVY VENTURES, LLC, a Virginia limited liability company,

    Defendant.
                          /

No. C 10-04609 WHA

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTIVE RELIEF**

## INTRODUCTION

In this employment dispute between a Virginia-based company and one of its former Bay Area employees, plaintiff moves for preliminary injunctive relief to bar the enforcement of two restrictive covenants in her employment contract with defendant: (1) a covenant not to compete and (2) a covenant restricting the solicitation of defendant's clients. Plaintiff contends that enforcement of these clauses within California would violate California Business and Professions Code Sections 16600 and 17200. Defendant counters with evidence that plaintiff misappropriated confidential business information just prior to resigning from her position and notes that it has already taken legal action against plaintiff in Virginia. In fact, defendant has successfully obtained preliminary injunctive relief from a Virginia state court enjoining plaintiff from materially breaching her employment agreement. For the reasons set forth below, plaintiff's motion for preliminary injunctive relief is **DENIED**.

**STATEMENT**

Plaintiff Myra Marcelo entered into an employment agreement with defendant Ivy Ventures, LLC, in December 2009. Pursuant to this agreement, plaintiff was hired as an on-site "community director" where she served as a marketing representative for one of defendant's Bay Area clients, Seton Medical Center in Daly City (Marcelo Decl. ¶ 4). According to defendant, plaintiff enjoyed a special position of "trust and confidence" as a community director and was provided with highly sensitive confidential and proprietary information about its customers and employees. In particular, defendant contends that plaintiff was privy to customer account information, information about customer agents and account managers, marketing methods, employee handbooks and manuals, written financial information, business plans, and other information not known to the general public (Opp. 5–6).

**1.   THE TERMS OF THE EMPLOYMENT AGREEMENT**

Plaintiff's employment agreement with Ivy Ventures contained restrictive covenants. Three of these covenants are important here. *First*, the agreement included a section "Non-Disclosure of Confidential Information," wherein plaintiff agreed "to hold and safeguard any information about the Company or any clients of the Company gained by [her] during the term of [her] employment" and to not "misappropriate, disclose or make available to anyone for use outside the Company's organization at any time, either during . . . or subsequent to any termination of employment" defendant's confidential information (Marcelo Decl. Exh. 1, ¶ 6).

*Second*, the agreement included a section entitled "Covenant Not to Compete," wherein plaintiff agreed "that during the term of [her] employment and for one (1) year following the termination of [her] employment, . . . [she] will not, directly or indirectly, compete with the Company by providing or offering Competitive Services (as defined below) anywhere within fifteen (15) miles of the location of any Company client at which, or with respect to which, Employee provided services on behalf of the Company" (*id*. at ¶ 7). "Competitive Services" were defined in the agreement as "services that are (I) substantially similar to the services provided by [plaintiff] to, or on behalf of, the Company while employed by the Company, and (ii) offered or provided to any person or entity that is engaged in the business of owning, operating, managing,

2

1  marketing or providing consulting services to hospitals, diagnostic imaging facilities or other
2  outpatient services" (*ibid.*).

3  *Third*, the agreement included a section entitled "Non-Solicitation of Clients," wherein
4  plaintiff agreed "that for one (1) year following termination of [her] employment, . . . [she] shall
5  not, directly or indirectly, as an owner, officer, director, employee, agent, representative,
6  consultant or independent contractor: (a) solicit, contact, call upon, communicate with, or attempt
7  to communicate with any Company client for the purpose of providing Competitive Services to
8  such client, (b) sell, provide or divert any Competitive Services to any Company client,
9  ©) perform or engage in any Competitive Services for any Company client, or (d) accept or
10 receive any Company client for the purpose of providing any Competitive Services" (*id.* at ¶ 8).
11 "Company client" was defined in the agreement as "(1) any individual or entity that was a client
12 of the Company within one year of [her] termination or (2) any individual or entity that was
13 solicited for business by the Company within one year of [her] termination" (*ibid.*).

14 In addition to these restrictive covenants, the employment agreement also contained the
15 following Virginia choice of law and forum selection clauses (*id.* at ¶¶ 14, 19):

> 14. Governing Law. The parties acknowledge and agree that this Agreement is made in the Commonwealth of Virginia, and that the interpretation and performance hereof shall be governed in all respects by the laws of the Commonwealth of Virginia, excluding its choice of law rules.
>
> \*           \*           \*
>
> 19. Forum Selection. The parties agree that the exclusive venue for the resolution of any dispute arising from the provisions of this Agreement shall lie with any court of competent jurisdiction in Henrico County, Virginia.

23 Plaintiff signed the employment agreement with defendant when she accepted her position
24 in December 2009. According to defendant, various terms of the agreement had been negotiated
25 between the parties prior to plaintiff's acceptance of her position, including plaintiff's salary and
26 vacation time. Indeed, annotations to various terms in the employment agreement appear on the
27 face of the document that plaintiff signed and emailed to defendant (*see* Opp. Exh. 9; Wetmore
28 Decl. ¶ 4).

3

### 2. PLAINTIFF'S RESIGNATION TO COMPETE WITH DEFENDANT

Plaintiff's employment with defendant Ivy Ventures did not last long. On August 18, 2010, only seven months after accepting employment with defendant, plaintiff gave notice to defendant that she would be resigning from her position effective August 31 due to a dispute regarding her "appropriate compensation" (Marcelo Decl. ¶ 11). According to plaintiff, after resigning from Ivy Ventures, she sought to compete with her former employer for sales and marketing services in the Bay Area. In particular, plaintiff intended to capitalize on the fact that Ivy Ventures' contract to provide sales and marketing services for Seton Medical Center was expiring in October 2010 (*id.* at ¶ 18). She sought to pursue and obtain a contract on her own with Seton Medical Center to provide sales and marketing services once defendant's contract had expired. Such a contract — in plaintiff's opinion — would have been easy to obtain given the relationships she had developed with Seton Medical Center personnel and would have provided her with "stability . . . to build a business and to eventually hire employees in California" (*ibid.*). According to her declaration, plaintiff also intended to approach another Ivy Ventures Bay Area client, O'Connor Hospital, whose contract with defendant was set to expire in September 2010.

Plaintiff has not, however, followed through on pursuing these opportunities. As alleged in the complaint and in the instant motion for preliminary injunctive relief, plaintiff believes that she has been unlawfully restrained from pursuing these contracts due to legal threats surrounding the restrictive covenants in her employment agreement with defendant.

### 3. ALLEGED MISAPPROPRIATION OF CONFIDENTIAL INFORMATION

According to defendant Ivy Ventures, plaintiff's version of the facts is only half the story. Based upon email records maintained by defendant, the opposition brief alleges that plaintiff emailed herself (from her work email account to her personal email account) numerous documents containing "highly sensitive confidential information" prior to resigning from her position with defendant. Specifically, on July 9, 2010, plaintiff emailed herself a spreadsheet created by Ivy Ventures listing all of its referring physicians and showing a specific route — based upon a detailed analysis by defendant — for visiting these physicians so that they are visited with predetermined frequencies (Opp. Exh. A ¶ 25). Additionally, on August 20, just two

4

days after plaintiff gave notice of her resignation to Ivy Ventures (but while she was still an employee of the company), she emailed herself a large number of "confidential" and "proprietary" documents that "were developed by Ivy over the course of many years," including (*id.* at ¶¶ 26, 28):

- A document that explains and uses a proprietary methodology, developed and used only by defendant, for analyzing trends in exam referrals to Ivy Ventures' clients.

- A description of defendant's expectations of each sales and marketing representative, including expectations for communication, approval of marketing material, and reporting.

- Templates and forms used by defendant for "ghost calling" and "ghost shopping" clients and competitors, which allows Ivy Ventures to covertly gauge the service level of its clients and competitors.

- A document that describes the content of monthly reports that defendant generates for its clients, including tips and advice on how to make the reports meaningful to clients.

- Ivy Ventures' employee handbook, which describes in detail all of defendant's human resource policies and procedures.

- Job descriptions for sales and marketing representatives hired by defendant.

- Vacation request spreadsheets, performance appraisal templates, and expense form templates used by defendant.

- The presentation that Ivy Ventures uses to pitch ideas to its clients and convince them that an investment in defendant's employees is worthwhile.

- Various sales tools and sample referral letters used by defendant in its business operations.

- A copy of Ivy Ventures' "10 Critical Success Factors," which is a proprietary method used by defendant to grade the service level of Ivy's clients and competitors of clients.

In addition to these suspicious email communications, on August 29, 2010, while still an employee of Ivy Ventures, plaintiff attempted to contact another Ivy Ventures employee, Sabrina Malcolmson, who held a position equivalent to plaintiff's at O'Connor Hospital (another Bay Area client of defendant). Plaintiff apparently left Ms. Malcolmson a voice mail stating that she intended to "compete with Ivy" and asked Ms. Malcolmson if she would be willing to work for

5

her if she took defendant's "contract with O'Connor" (*id.* at ¶¶ 32–33). The contents of this voice mail are supported by both an affidavit prepared by Ms. Malcomson as well as a digital recording of the voice mail message (*id.* at ¶ 43).

Given this backdrop, defendant Ivy Ventures argues that plaintiff was (and still is) improperly attempting to misappropriate its confidential and proprietary business information to "set up her own competing business" and compete directly with defendant in clear violation of the various restrictive covenants in her employment agreement (*id.* at ¶¶ 28–29). Indeed, defendant also notes that the expiration dates for its contracts with Seton Medical Center and O'Connor Hospital were *confidential* and that plaintiff can only know this information by having copies of the contracts. Since plaintiff was not granted access to these contracts while employed at Ivy Ventures, defendant contends that this is further evidence that plaintiff has misappropriated confidential information in violation of her employment agreement.

### 4. THE VIRGINIA PROCEEDINGS

After discovering the evidence of plaintiff's alleged misdeeds, defendant took swift action. On September 10, 2010, over a month before plaintiff filed the instant action in San Francisco County Superior Court, defendant Ivy Ventures filed a lawsuit against Ms. Marcelo in the Circuit Court of Henrico County, Virginia, accompanied by a motion for a "temporary injunction" (the state equivalent to a preliminary injunction in Virginia) to enforce the restrictive covenants in plaintiff's employment agreement (Opp. Exh. A; Wetmore Decl. ¶ 2). The verified complaint in the Virginia action alleged that Ms. Marcelo had breached her fiduciary duties to Ivy Ventures and had violated the restrictive covenants of her employment agreement, setting forth all of the evidence of unauthorized communications discussed in the prior section.

After receiving notice of the Virginia lawsuit, Ms. Marcelo appeared (through counsel) before Judge Burnett Miller III in Virginia state court to contest both personal jurisdiction and whether service was proper (Marcelo Decl. ¶¶ 13–14, Exh. 3). On September 27, 2010, Judge Miller heard oral argument from both sides and issued an order granting Ivy Ventures' request for a temporary injunction. The order granting the motion expressly stated that both the complaint and motion had been "duly served" upon Ms. Marcelo and found, "upon hearing from Ivy and

6

1  Defendant [Marcelo], and its consideration of the evidence and arguments properly before it, . . .
2  that Ivy has met its burden to establish grounds for a temporary injunction in this matter" (Opp.
3  Exh. 5 at 1). The order then set forth the terms of the injunction, stating that Ms. Marcelo "is
4  enjoined from any material breach of the restrictive covenants set out in her Employment
5  Agreement with Ivy" including covenants for non-disclosure of confidential information, not to
6  compete, non-solicitation of employees, and non-solicitation of clients (*id.* at ¶ 1(a)–(d)).[1]

7  Importantly, the temporary injunction order rejected a proposed finding that "[t]he
8  restrictive covenants in Defendant's Employment Agreement are governed by Virginia law and
9  are fully enforceable" (*see id.* at ¶ 2). The order intentionally left those questions unresolved.
10 Finally, the Virginia court set an expiration date for the temporary injunction of six months from
11 the date of the order, unless the matter was resolved, a permanent injunction was entered, or an
12 order stated otherwise before that period expired (*id.* at ¶ 8). Ms. Marcelo removed the action to
13 the United States District Court for the Eastern District of Virginia on November 4, 2010, on
14 diversity jurisdiction grounds.

15  On November 19, Judge Payne of the Eastern District of Virginia held a hearing to
16 address the issue of personal jurisdiction. During that hearing, Judge Payne ordered Judge Miller
17 to clarify once and for all whether he ruled on the issue of personal jurisdiction. Subsequently,
18 Judge Miller held a telephone conference with both parties on November 23, at which point he
19 emphatically stated that he ruled, "Virginia has jurisdiction over the litigation matter, including
20 all causes of action, whether contract or tort in nature, alleged in the Complaint."

21  Finally, on November 23, Ms. Marcelo filed her answer and counterclaim in the Eastern
22 District of Virginia (the counterclaims filed by Ms. Marcelo are exactly the same as those put
23 forth in her amended complaint before this Court). Next, Ms. Marcelo filed a motion to vacate or

---

[1] Ivy Ventures argued in the Virginia proceedings that Ms. Marcelo had sufficient "minimum contacts" with Virginia to be subject to personal jurisdiction there. Specifically, while Ms. Marcelo signed her employment agreement in California, Ivy Ventures apparently argued that the agreement was drafted in Virginia, executed in Virginia, and negotiated with supervisors in Virginia. Ivy Ventures also argued that plaintiff had twice visited Virginia during her seven-month stint as an Ivy Ventures employee — once in December 2009 for three to four days of training and a second time in March 2010 for additional training. Finally, many of the "confidential" documents that Ms. Marcelo allegedly "misappropriated" and emailed to herself were provided to her during these training sessions held in Virginia (Opp. 7). Judge Miller concluded that these contacts were sufficient to maintain jurisdiction over her in the Virginia proceedings.

7

1  modify the temporary injunction.  In addition, on December 2, Ms. Marcelo filed a motion to
2  transfer the action in Virginia to this Court.  All the pending motions before Judge Payne in the
3  Eastern District of Virginia are scheduled for a hearing on December 29, 2010.

\*          \*          \*

The instant action was filed by plaintiff Myra Marcelo in San Francisco County Superior Court on October 12, 2010, over two weeks after Judge Miller issued the temporary injunction in the Virginia proceedings (Opp. Exh. 6).  The complaint, which sought both injunctive relief and exemplary damages, alleged two claims against defendant:  (1) declaratory judgment under California's Declaratory Judgment Act, codified in Section 16600 of the California Code of Civil Procedure, that the restrictive covenants not to compete and barring client solicitation in plaintiff's employment contract are void and unenforceable in California and that plaintiff has not breached the contract or any duties to defendant, and (2) for violating Section 17200 of the California Business and Professions Code by including and attempting to enforce these restrictive covenants in plaintiff's employment agreement (Compl. ¶¶ 36–48).  Defendant Ivy Ventures removed the action on diversity jurisdiction grounds the day after the complaint was filed (Dkt. No. 1).  On October 27, two weeks after the action was removed, plaintiff filed the instant application for preliminary injunctive relief (Dkt. No. 4).

Defendant subsequently filed a motion to dismiss or stay the action; however, this motion was rendered moot when plaintiff filed an amended complaint on November 18, 2010 (Dkt. No. 33).  The amended complaint contained the original two claims against the defendant, plus five additional claims, including violation of California Labor Code Section 432.5, violation of California Labor Code Sections 510 and 1194, defamation, abuse of process, and intentional interference with prospective economic relations (Amd. Compl. ¶¶ 39–80).  On December 6 defendant filed a new motion to dismiss, stay, or transfer the action (Dkt. No. 46).

This order on the instant motion for a preliminary injunction follows a hearing and full briefing on the merits.

**ANALYSIS**

A plaintiff seeking a preliminary injunction must establish that she is likely to succeed on the merits, that she is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in her favor, and that an injunction is in the public interest. *Winter v. Natural Resources Defense Council*, 129 S. Ct. 365, 374 (2008). In every case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief[,]" keeping in mind that preliminary injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 375–76 (citation omitted).

Closely intertwined with these considerations, however, is the question of whether this action should be dismissed or stayed in light of the proceedings that were instigated in Virginia state court over a month before the instant action was filed and are currently pending in the United States District Court for the Eastern District of Virginia before Judge Payne.

Defendant argues that it should be allowed to litigate these issues in the forum of its choice. Specifically, defendant argues that it properly filed an action against plaintiff in Virginia state court *over a month before plaintiff filed the instant action,* and the first-filed action involves the exact same questions of breach, validity, and enforceability of the restrictive covenants at issue herein, and plaintiff is free to make, and is indeed making, the exact same arguments she has made here — including whether California law should apply to the claims despite a choice of law provision in the employment contract — in the allegedly "parallel" Virginia action. In this connection, defendant emphasizes that a hearing has already been held in the other litigation and preliminary injunctive relief has already been granted. Furthermore, the Virginia court expressly left the door open for plaintiff to attack the enforceability of the restrictive covenants and the choice of law provision, and plaintiff has done precisely that by filing the motions to vacate and transfer (to be addressed on December 29 by Judge Payne). Defendant therefore asks that the instant action be dismissed or stayed, and has filed a motion (currently being briefed) seeking such relief.

9

A number of decisions in this district have addressed similar situations. For example, in *Google, Inc. v. Microsoft Corporation*, Google, Inc. and one of its newly acquired employees, Kai-Fu Lee, sued Microsoft Corporation in Santa Clara County Superior Court for declaratory relief that a covenant not to compete in an employment agreement between Lee (a former Microsoft employee) and Microsoft was invalid and unenforceable under California law. *See* 415 F. Supp. 2d 1018, 1019–20 (N.D. Cal. 2005) (Whyte, J.). Three days *earlier*, however, Microsoft had filed its own lawsuit against Google and Lee in Washington state court for breach of the employment contract and tortious interference with contractual relations. After the California action was removed, the federal district court — on Microsoft's motion — elected to stay the proceedings pending the resolution of the Washington action. Citing *Brillhart v. Excess Insurance Company of America*, 316 U.S. 491, 495 (1942), the court explained that "[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *See also Chamberlain v. Allstate Insurance Company*, 931 F.2d 1361, 1366–67 (9th Cir. 1991) ("[W]hen a party requests declaratory relief in federal court and a suit is pending in state court presenting the same state law issues, there exists a presumption that the entire suit should be heard in state court.").

Other judges in this district and our sister districts in California have either dismissed or stayed proceedings in lieu of parallel state court actions by out-of-state employers involving the breach, validity, and enforceability of covenants not to compete. *See, e.g.*, *Schmitt v. JD Edwards World Solutions Co.*, 2001 WL 590039 (N.D. Cal. 2001) (Walker, J.); *DeFeo v. Procter & Gamble Co.*, 831 F. Supp. 776 (N.D. Cal. 1993) (Weigel, J.); *Swenson v. T-Mobile USA, Inc.*, 415 F. Supp. 2d 1101 (S.D. Cal. 2006). Each of these cases recognized that federal courts should decline to issue declaratory relief if the federal court would "needlessly determine issues of state law[,]" help a party "avoid state court proceedings[,]" or cause "duplicitous litigation." *Chamberlain*, 931 F.2d at 1367.

This order agrees with defendant that the instant dispute raises serious questions regarding "[w]ise judicial administration, giving regard to conservation of judicial resources and

10

comprehensive disposition of litigation." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817–18 (1976). There is no question that Ivy Ventures, after uncovering evidence that plaintiff had potentially misappropriated confidential business information and was planning to use this information to compete directly with defendant, was the first to file an action to enforce the restrictive covenants in the employment contract, and did so in the venue specified in the forum selection clause. Only after the Virginia state court rejected plaintiff's personal jurisdiction objections and granted defendant's request for a temporary injunction did plaintiff file the instant declaratory judgment dispute in California. Given this procedural history, there are serious questions surrounding whether this Court should even adjudicate the merits of this case. This is especially troubling considering plaintiff filed the exact same counterclaims in the Eastern District of Virginia as she filed in her amended complaint before this Court.[2]

Plaintiff's attempts to distinguish the above-cited decisions do not — for the purposes of gauging her likelihood of success on the merits — eliminate the concerns surrounding wise judicial administration and whether this action should be dismissed or stayed before even reaching the merits. *First*, even if the Virginia court will apply that state's choice-of-law rules rather than California's choice-of-law rules, this is not a dispositive distinction on whether abstention would be proper. "[E]xact parallelism" is not required for two proceedings to be "parallel" under the abstention rules discussed herein. It is sufficient if the two proceedings are "substantially similar." *See Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989). *Second*, the ability of plaintiff to obtain meaningful relief in the Eastern District of Virginia is clearly disputed between the parties. The resolution of this question — in particular, whether Virginia's choice-of-law rules will adequately take into account California's supposedly "strong public policy" favoring open competition to apply California law — is more appropriate for resolution in defendant's pending motion to dismiss. For the benefit of our sister federal court in Virginia,

---

[2] The fact that the Virginia action was removed to the United States District Court for the Eastern District of Virginia does not obviate this inquiry. The Supreme Court in *Colorado River* made clear that considerations of "[w]ise judicial administration" apply "in situations involving the contemporaneous exercise of concurrent jurisdictions, *either by federal courts or by state and federal courts*." 424 U.S. at 817. Indeed, the *Colorado River* decision commented that "[a]s between federal district courts, . . . though no precise rule has evolved, the general principle is to avoid duplicative litigation." *Ibid.*

11

1  however, it is worthwhile to note that the restraints in question are likely illegal in California,
2  notwithstanding the choice-of-law provision. *Third*, the mere existence of a separate claim
3  brought by plaintiff under Section 17200 does *not* clearly distinguish this action from *Google*,
4  *Swenson*, and the other decisions cited herein. It may nevertheless be appropriate to dismiss or
5  stay this entire action, or alternatively a subset of claims, under *Colorado River* and *Brillhart*.[3]

6  In any event, given that plaintiff elected to remove the Virginia state court action to
7  federal district court, there are now two *federal* proceedings that are potentially "parallel," and at
8  the very least, extremely similar. Neither side has addressed whether this procedural move by
9  plaintiff impacts the abstention inquiry in light of the Supreme Court's commentary in *Colorado*
10 *River*. *See* 424 U.S. at 817 (noting that "[a]s between federal district courts, . . . though no precise
11 rule has evolved, the general principle is to avoid duplicative litigation"). In the same vein,
12 neither side has commented on whether this removal will adequately protect Ms. Marcelo from
13 "possible prejudices in state court" — the very purpose of federal diversity jurisdiction. *See*
14 *Lively v. Wild Oats Markets, Inc.*, 456 F.3d 933, 939–40 (9th Cir. 2006). Nevertheless, the state
15 court injunction remains effective despite the removal.

16 In sum, this order finds that the substantial questions that exist surrounding whether this
17 action even should proceed in this forum weigh heavily against the granting of preliminary
18 injunctive relief. The action in Virginia was removed to federal court and the very issues at play
19 here are also up for decision in a few days before Judge Payne. Out of comity and deference to
20 our sister federal court this order declines to intervene at this advanced stage of the action.
21 Plaintiff has not demonstrated her entitlement to the "extraordinary" remedy of preliminary
22 injunctive relief. For these reasons, plaintiff's motion must be **DENIED**.

---

[3] Federal courts have greater discretion to abstain from adjudicating claims for declaratory relief than non-declaratory judgment claims when parallel proceedings exist. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). As the Supreme Court clarified in *Wilton*, the *Colorado River* decision did not change the rule in *Brillhart* that district courts have "substantial latitude in deciding whether to stay or to dismiss a declaratory judgment suit in light of pending state proceedings[.]" For non-declaratory judgment claims, however, the "exceptional circumstances" test set forth in *Colorado River* applies.

12

**CONCLUSION**

For the foregoing reasons, plaintiff's motion for preliminary injunctive relief is **DENIED**.

**IT IS SO ORDERED.**

Dated: December 9, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE